IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDDIE HORNER,

Plaintiff,

vs.

PANELTECH INTERNATIONAL, LLC. et al.,

Defendants.

_______________________________/

Civ. No. S-09-1564 KJM CMK

AND ALL RELATED CROSS-CLAIMS AND THIRD PARTY ACTIONS

_______________________________/

On November 9, 2011, the court heard argument on defendant and cross-claimant Paneltech's motion to contest the good faith settlement between third party defendant and counter-claimant CORP[1] and plaintiff Horner. Jason Shane and Vince Castillo, Lombardi, Loper & Conant, LLP, appeared for CORP. Tamara Wood, Reiner, Simpson & Slaughter appeared for plaintiff; David MacMillan, the Costa Law Firm, appeared for defendant/cross-claimant Paneltech International LLC. For the reasons discussed below, the court denies Paneltech's motion.

---

[1] Central Oregon and Pacific Railroad uses this acronym to identify itself.

I. Background

On February 10, 2009, Horner filed a complaint against Paneltech and fifty "Doe" defendants in Siskiyou County Superior Court. Paneltech removed the case to this court, relying on diversity jurisdiction. ECF No. 1. The parties stipulated to Paneltech's filing a third party complaint against CORP, which included causes of action for express written indemnity and breach of contract, implied total indemnity and contribution/apportionment of fault. ECF Nos. 10, 11.

CORP answered Paneltech's third party complaint and filed a cross-claim against Paneltech, raising claims of equitable indemnity, comparative indemnity and declaratory relief. ECF Nos. 13, 14.

On January 28, 2010, Horner filed an amended complaint, naming Paneltech and CORP as defendants. ECF No. 18. In October 2010, the parties stipulated to Horner's filing a second amended complaint, naming Paneltech, CORP and Greenbrier Industries as defendants. ECF Nos. 22-23. The parties again stipulated to Horner's filing a third amended complaint, which substituted Gunderson Rail Services LLC for the erroneously named Greenbrier Companies, Inc. ECF Nos. 29, 30. This third amended complaint states claims for negligence and products liability against defendants CORP and Paneltech. ECF No. 29.

On May 16, 2011, the parties stipulated to the dismissal of Gunderson Rail Services LLC. ECF No. 39.

CORP filed a motion for summary judgment on July 8, 2011 and, while it was pending, filed a notice of settlement and an application for a determination of good faith settlement under section 877.6 of the California Code of Civil Procedure. ECF Nos. 64-65.

II. Analysis

A. Good Faith Settlement

Under section 877 of the California Code of Civil Procedure, when a release or dismissal is "given in good faith" to "one or more of a number of tortfeasors claimed to be liable

for the same tort," the release "shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors." Section 877.6(a) provides that any party to an action "shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff and one or more alleged tortfeasors. The initial application for approval of a settlement may be relatively "barebones," outlining "the ground of good faith, accompanied by a declaration which sets forth a brief background of the case. . . ." *City of Grand Terrace v. Superior Court*, 192 Cal.App.3d 1251, 1261 (1987).[2] This showing shifts the burden to any non-settling defendant who objects to the settlement; if the objector files declarations, the settling party may file responsive counterdeclarations. *Id*. at 1261-62. The hearing contemplated by the statute may be conducted on these declarations and counterdeclarations. *See Nutrition Now, Inc. v. Superior Court*, 105 Cal.App.4th 209, 213 (2003). Federal courts sitting in diversity or hearing state law claims based on supplemental jurisdiction use this framework in evaluating a proposed settlement. *Mason and Dixon Intermodal, Inc. v. Lapmaster International LLC*., 632 F.3d 1056, 1060 (9th Cir. 2011); *Federal Savings and Loan. Ins. Corp. v. Butler*, 904 F.2d 505, 511 (9th Cir. 1990).

In *Tech-Bilt, Inc v. Woodward-Clyde & Associates*, 38 Cal.3d 488, 491 (1985), the California Supreme Court examined "the meaning of the phrase 'settlement made in good faith' as used in Code of Civil Procedure section 877.6." After examining the case law, the court concluded that:

> A more appropriate definition of 'good faith,' . . .in keeping with the policies of the statute, would enable the trial court to inquire, among other things, whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries. This is not to say that bad faith is 'established by a showing that a settling defendant paid less than his theoretical proportionate or fair share.' Such a rule would unduly discourage settlements. 'For the

---

[2] Paneltech's objection to the adequacy of CORP's initial showing is thus misguided. As CORP observed, it is Paneltech's burden to demonstrate that the settlement is not in good faith.

> damages are often speculative, and the probability of legal liability therefor is often uncertain or remote. And even where the claimant's damages are obviously great, and the liability therefor certain, a disproportionately low settlement figure is often reasonable in the case of a relatively uninsured, or underinsured, joint tortfeasor.'
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> But these considerations do not lead to the conclusion that the amount of the settlement is irrelevant in determining good faith. Rather, . . . a number of factors [must] be taken into account, including a rough approximation of plaintiff's total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of the settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants. Finally, practical considerations require that the evaluation be made on the basis of information available at the time of settlement.

*Id*. at 499 (internal citations omitted). Another consideration is the potential for indemnity to a nonsettling defendant. *Long Beach Memorial Medical Center v. Superior Court*, 172 Cal.App.4th 865, 873 (2009); *Holmes v. Home Depot USA, Inc*., 2009 WL 2030898, at *3 (E.D. Cal. July 9, 2009). The party who asserts the lack of good faith should be permitted to show "that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Tech-Bilt*, 38 Cal.3d at 499-500.

B. The Challenged Settlement

Plaintiff Horner filed this action to recover damages for injuries he suffered on February 12, 2007 at the lumber yard of Roseburg Forest Products, when a chain binder attached to a log bunk on a railcar broke as he was adjusting it, causing him to fall. Paneltech leased the railcar from GE Railcar Services and owned the chain binder and log bunk; Paneltech subleased the railcar to CORP. ECF No. 50 at 5 ¶ 13; ECF No. 56-4 at 5 ¶ 13

/////

In support of its application for determination of good faith settlement, CORP submitted the declaration of counsel, who described the action and explained that the "settlement was arrived at during informal settlement negotiations, the seeds of which were sown at a day-long mediation with Michael Ostril of JAMS, whereby Plaintiff agreed to accept One Hundred Thousand Dollars ($100,000.00) in resolution of any and all issues arising from CORP's control, inspection, maintenance, or repair of the subject railcar." ECF No. 66 ¶ 6. Counsel avers that the settlement was the result of an arms' length bargaining process. *Id*. ¶ 8.

Paneltech says this proposed settlement must be measured against a potential verdict of between three and four million dollars, and considered in the light of CORP's contractual duty to repair the log binder. In support it offers the declaration of counsel, who avers generally that the factual statements in the motion come from discovery and his investigation in this case; counsel also attaches a summary of the sublease agreement between Paneltech and Corp. ECF No. 68-2.

1. Approximating Plaintiff's Recovery

Paneltech outlines plaintiff's expenses and economic losses, which total approximately one million dollars, and predicts that a jury verdict could be two or three times that amount. It notes that plaintiff claims injuries to his cervical spine, right and/or left shoulder, upper arm, left chest wall, and lower and mid back, which have resulted in two cervical spine surgeries and debilitating vertigo and headaches. ECF No. 68-1 at 2. Plaintiff's claims for damages, however, are not determinative in resolving whether a settlement was made in good faith. *Cahill v. San Diego Gas & Electric Co.*, 194 Cal.App.4th 939, 964 (2011).

In opposition, CORP provides a copy of a report from Paneltech's medical expert, Howard Slyter, M.D., who opines that as a result of the fall, plaintiff suffered an acute chest wall strain and an acute lumbar strain and spasm. ECF No. 83-2 at 18. Dr. Slyter continues that plaintiff's later complaints of headache and vertigo are not related to the fall. He also concludes that plaintiff did not suffer significant injury to his cervical spine when he fell and that the

problems with his spine stemmed from a progressive degenerative condition of the spine, cervical spondylosis, which first manifested itself in 2001. ECF No. 83-2 at 18-21. Dr. Slyter's opinion is corroborated by portions of the deposition testimony of Dr. Scott Durbin, D.C., who treated plaintiff for a number of conditions and who did not note any complaints of dizziness or headaches before September 2008. ECF No. 83-3 at 3. In addition, Dr. Durbin's initial contact with plaintiff, in November 2003, was for treatment of neck and shoulder problems similar to those he reported after the accident in February 2007. ECF No. 83-3 at 4.[3]

CORP also has presented an analysis from Paneltech's biomechanical expert, who concluded that "it is unlikely that the forces acting on Mr. Horner's cervical spine during the alleged incident of 2/12/07 could have caused injury to his intervertebral discs or other related structures. The forces would have been too low to have caused any additional damage to his previously degenerated intervertebral discs. A chest wall injury would have been unlikely as a result of the alleged subject incident." ECF No. 83-5 at 6.

Medical records attached to the expert reports do suggest that plaintiff's problems may have been the result of cumulative trauma or that the accident aggravated his cervical spinal stenosis. ECF No. 83-5 at 35-36. Nevertheless, it appears that plaintiff's injury was not the cause or at least not the only cause of his physical problems and also, therefore, not the cause of his loss of employment. Although neither side has presented a breakdown of the medical costs, it is reasonable to believe that the bulk of them stem from plaintiff's surgeries and the later visits related to the headaches and vertigo. In addition, although the parties have not presented the economist's report, it appears that plaintiff's ultimate inability to continue working was not solely attributable to the accident, which would also reduce his past and future earnings' loss.

---

[3] The court does not consider the report of Dr. Robert Herrick, M.D., submitted in connection with plaintiff's application for worker's compensation, in which Dr. Herrick opined that plaintiff's headaches and dizziness did not result from the accident. This report was issued in September 2011, after plaintiff had agreed to settle with CORP. *See Tech-Bilt*, 38 Cal.3d at 499 (the evaluation of the settlement must be made on the basis of information available at the time of the settlement).

In addition, as plaintiff says, the settlement negotiations throw light on the potential value of the case. Plaintiff's last demand to Paneltech was $975,00.00 and Paneltech made a Rule 68 offer of $100,000. ECF No. 79 at 7. In light of the medical evidence, plaintiff's settlement offer of less than a million dollars to Paneltech is a better approximation of his recovery than the two to three million Paneltech posits.

2. CORP's Proportional Liability

According to Paneltech, CORP's liability could be based on its responsibility for the defective weld, its failure to inspect for the defective weld and/or its failure to repair the defective weld. ECF No. 68-1. Paneltech says there is little question that the weld was defective and argues that because the railcar had not been in its possession for a number of days before the accident, it is likely that CORP was responsible for the weld. Paneltech also argues CORP had many opportunities to inspect the car before it reached Roseburg Forest Products; had CORP inspected, it would have had the duty to repair the defective weld. These factors suggest, in Paneltech's view, that CORP's liability is greater than Paneltech's, and perhaps up to 60 to 75 percent of the total fault. ECF No. 68-1 at 7. Paneltech does not cite to portions of the record specifically, but relies generally on its opposition to CORP's motion for summary judgment.

Plaintiff and CORP counter that there is a distinct likelihood the court would find CORP to have no liability based on the confused state of the evidence on the creation of the weld, and the possibility that any claims of failure to inspect and repair are preempted by the Federal Railroad Safety Act. *See In re Derailment Cases*, 416 F.3d 787, 793 (8th Cir. 2005) (finding state law claim for negligent inspection preempted by regulations adopted in compliance with FRSA). At argument, Paneltech again referred the court generally to its opposition to CORP's motion for summary judgment as support for its claim that CORP's liability is greater than Paneltech's.

/////

/////

As with the rough approximation of plaintiff's recovery, Paneltech has not borne its burden of showing that CORP'S proportional share of liability is more than its own.[4]

3. CORP's Financial Condition

Paneltech says that the court cannot evaluate CORP's financial condition under the "information-limiting format" of its application, but suggests that because of the size of CORP's parent company, it must carry "millions of dollars of primary insurance coverage. . . ." ECF No. 68-1 at 7-8. Paneltech has not, however, asked for leave to conduct discovery about CORP's financial condition or presented anything but speculation as to CORP's insurance coverage. Based on this record, the court can reasonably assume the settlement took account of CORP's coverage. *See North County Contractors Assn., Inc. v. Touchstone Ins. Serv.*, 27 Cal. App.4th 1085, 1094 (1994) .

4. Collusion

Paneltech has not suggested that the settlement is collusive. That it was reached as the outgrowth of mediation suggests it was not.

Based on the record before it, the court has made "an educated guess," which "is the best a judge can do when deciding whether a settlement is made in good faith." *Id*. at 1095. Paneltech has not borne its burden of showing that the settlement is "out of the ballpark."

IT IS THEREFORE ORDERED that:

1. Paneltech's motion to contest CORP's and Horner's settlement (ECF No. 68) is denied;

2. CORP's motion for summary judgment (ECF No. 41) is denied as moot;

/////

/////

---

[4] To the extent this court must consider CORP's potential liability for equitable indemnity to Paneltech, its conclusion does not change. If CORP's liability to plaintiff is not certain, its liability to Paneltech is similarly uncertain. *Cahill v. San Diego Gas & Elec. Co.*, 194 Cal. App.4th at 965.

3. Dispositional documents confirming the settlement between CORP and plaintiff are due within thirty days of the date of this order; and

4. The case is set for a status conference with the nonsettling parties on February 2, 2012 at 2:30 p.m.

DATED: January 5, 2012.

UNITED STATES DISTRICT JUDGE